**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Ismail Ozgur Yaman</u>

    **v.**                                                    Case No. 12-cv-221-PB
                                                          Opinion No. 2013 DNH 009
<u>Linda Margherita Yaman</u>


<u>**O R D E R**</u>


This case arises from a custody dispute between the
divorced parents of two minor children who are currently living
in Hanover, New Hampshire.  Ismail Ozgur Yaman, the children's
father, was granted custody of both children by a Turkish court.
He has filed a petition here seeking an order requiring that the
children be returned to Turkey pursuant to the Hague Convention
on the Civil Aspects of International Child Abduction, Oct. 24,
1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11 ("Hague
Convention").

Linda Margherita Yaman, the children's mother, has
responded by arguing, among other things, that the children
should not be returned to Turkey because they are "now settled"
in New Hampshire.  A now-settled defense is viable only if the

1

person seeking the return order failed to file a return petition within a year of the date on which the children were wrongfully removed.  Dr. Yaman concedes that he did not file his petition within the one-year filing period, but he argues that the filing period should be equitably tolled because Ms. Yaman made it impossible for him to file his petition earlier by concealing the children's whereabouts.

In this order, I explain why concealment does not equitably toll the Hague Convention's one-year filing period.

## I.   BACKGROUND[1]

Dr. and Ms. Yaman met in 1997 in Detroit, Michigan where he was enrolled in post-graduate studies at Wayne State University. The couple married in August 2000 in Turkey, and then returned to the United States.  Ms. Yaman became a Turkish citizen on October 3, 2000.  The couple's older daughter, K.Y., was born on March 5, 2002, in the United States and later became a Turkish citizen.  In January 2003, the family moved to Turkey, where Dr.

---

[1] The parties dispute many of the facts related to the merits of this case.  None of the disputed facts, however, including whether Mr. Yaman sexually abused his children, whether Ms. Yaman actually concealed the children, or whether Mr. Yaman diligently searched for them, bears on the disposition of this motion.  I recite facts here on which the parties agree.

Yaman's parents live, and where Dr. Yaman had been hired as a professor in the Civil Engineering Department at the Middle East Technical University.  The Yamans' younger daughter, E.Y., was born in Turkey on August 11, 2003.  Both children are dual citizens of Turkey and the United States.

In May 2004, Ms. Yaman accused her husband of sexually abusing their daughters.  Dr. Yaman denied the allegations.  The parties separated in late December 2004.  In February 2005, Dr. Yaman filed for divorce, citing the "irretrievable breakdown of the marriage."  Ms. Yaman filed a counter suit in March 2005. Following divorce and custody proceedings, on March 13, 2006, a Turkish family court rejected the abuse allegations, concluding after a thorough investigation that they were false.  The court granted Dr. Yaman sole custody of the children.

Ms. Yaman appealed the Turkish Family Court order, during which time the children remained in her custody.  On April 3, 2007, the Supreme Court of Appeals affirmed the family court's custody decision.  Ms. Yaman appealed the decision, which the Supreme Court of Appeals again affirmed on July 16, 2007.  On August 3, 2007, the Turkish Family Court entered its final ruling awarding custody of the children to Dr. Yaman.

Ms. Yaman began preparing to remove the children from Turkey sometime during the divorce and custody proceedings. She contacted a former Army Ranger and snatchback specialist, Gus Zamora, who helped her and her mother devise a plan to abscond with the children from Turkey. In August 2007, Ms. Yaman fled Turkey in a boat bound for Greece with the children and without informing Dr. Yaman of her intentions to leave or where she was going. From Greece, Ms. Yaman traveled with the children to Andorra, where they lived for about two and a half years. She then moved with them to the United States in 2010, where they have remained to date. The children and Ms. Yaman currently live together in Hanover, New Hampshire.

Dr. Yaman filed a Hague Convention petition in this court in June 2012. He contends that Ms. Yaman sought to conceal the children's whereabouts from him after taking them from Turkey. For purposes of this motion, I assume that his allegations of concealment are true.

## II. **THE HAGUE CONVENTION**

The Hague Convention's first Article succinctly states its objectives, which are "to secure the prompt return of children

wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1; see also Abbott v Abbott, 130 S. Ct. 1983, 1989 (2010).  A hearing pursuant to the Convention "is not meant . . . to inquire into the merits of any custody dispute underlying the petition for return." Duarte v. Bardales, 526 F.3d 563, 569 (9th Cir. 2008) (citation and quotations omitted).  It functions instead to determine in which jurisdiction the custody dispute should be settled.  See 42 U.S.C. § 11601 (b)(4); Barzilay v. Barzilay, 536 F.3d 844, 847 (8th Cir. 2008); Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494, 10511 ("State Department Analysis").

    The Convention authorizes a person claiming that a child has been removed from a participating country in breach of custody rights to petition for the child's return.  It does not, however, purport to empower a judicial or administrative tribunal to issue a return order.  Instead, it assumes that the tribunal possesses such power and specifies in Article 12 the circumstances under which a tribunal ordinarily must issue a

return order.  Articles 13 and 20 set forth defenses which, if
proved, authorize a tribunal to refuse to issue a return order
even if such an order is otherwise required under Article 12.

Article 12 establishes rules for when a tribunal must issue
a return order that differ depending upon the amount of time
that elapses between the date of abduction and the date the
return petition is filed.  If "a period of less than one year
has elapsed from the date of wrongful removal or retention,"
Article 12 states that "the authority concerned shall order the
return of the child forthwith." Hague Convention, art. 12.  In
contrast, if the judicial or administrative proceeding is
commenced more than one year following abduction, a return order
must issue "unless it is demonstrated that the child is now
settled in its environment."  Id.

### III.  ANALYSIS

Dr. Yaman argues that the one-year filing period set forth
in Article 12 must be equitably tolled while an abducting parent
is concealing the location of a wrongfully removed child.  Ms.
Yaman disagrees.  I resolve this dispute by examining the treaty
to determine whether it authorizes a court to equitably toll the

6

one-year filing period.

The Supreme Court has recognized that "[t]he interpretation of a treaty, like the interpretation of a statute, begins with its text." Abbott, 130 S. Ct. at 1990 (quoting Medellin v. Texas, 552 U.S. 491, 506 (2008)). General rules of statutory "construction may be brought to bear on difficult or ambiguous passages," and the court "may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." E. Airlines, Inc. v. Floyd, 499 U.S. 530, 535 (1991) (citations and quotations omitted). In addition, "[i]t is well settled that the Executive Branch's interpretation of a treaty is entitled to great weight." Abbott, 130 S.Ct. at 1993 (citation and quotations omitted). I address each of these potential sources of meaning in turn and then consider decisions by domestic and foreign courts that have addressed the issue.

**A.    <u>Text</u>**

Neither the Hague Convention nor ICARA explicitly authorizes a court to equitably toll the one-year period set out in Article 12. To the contrary, Article 12 appears to adopt a categorical approach in which the filing of a return petition

7

within the one-year filing period precludes any consideration of
a now-settled defense but a later filing requires a court to
assess the merits of the defense if it is properly raised.
Because the text of Article 12 is silent with respect to
equitable tolling, I must look beyond it for a grant of power to
toll the one-year filing period.

**B.   Drafting History**

The Convention's drafting history provides no support for
Dr. Yaman's equitable tolling argument.

The drafters considered a number of solutions to the
problem of concealment.  For example, an early version of
Article 12, included in a preliminary draft of the Convention,
provided for two filing periods.  It set out a brief six-month
filing period for cases in which the left-behind parent was
aware of the abducted child's location, and also established an
extended time period and a discovery rule for cases in which the
left-behind parent was unaware of the child's location.  That
extended time period required the prompt return of a child if
the petitioner filed within six months of discovering the
child's location and no more than one year had elapsed since the
child's abduction.  Actes et documents de la quatorzieme session

8

(1980), tome III, Child abduction ("Preparatory Work") at 168.

In revising the preliminary draft, delegates discussed the possibility that a "clever abductor" might attempt to evade a return order under the Convention by concealing a child's location for more than a year.  Id. at 216.  To address this concern, the delegates considered proposals for much longer extensions to the time period for cases involving concealment. See, e.g., id. (discussing a proposal for a two-year time period in cases of concealment).  At the same time, other delegates were concerned that one year was too long, and that, considering the fact that a child may become acclimated to his new environment, the time period in Article 12 should be no longer than six months.  Id. at 288 (summarizing the proposal of the delegate from the Netherlands).  Thus, the delegates recognized that the time period in Article 12 must account both for the case of the "clever abductor," as well as for the fact "that children may quickly get used to new surroundings," and uprooting a child multiple times may be harmful to him.  Id. at 216.  At least one delegate also expressed a concern that a discovery rule may be difficult to apply.  Id. at 232 (summarizing one delegate's concern that if the "starting point"

of the one-year period is the discovery of the child, "the provision may pose some problems of interpretation").

Ultimately, the drafters resolved these competing concerns by adopting the current version of Article 12, which employs a single, one-year time period during which an abducted child must be returned forthwith.  It also requires a tribunal to issue a return order even after one year has elapsed, unless the respondent can establish that the child is settled in his new environment.

The Explanatory Report prepared by the Convention's official reporter ("Perez-Vera Report")[2] suggests that the delegates considered Article 12 the final word on the problem of concealment.  See Perez-Vera Report at ¶ 108 ("[T]he application

---

[2] Although the Perez-Vera Report is not part of the official drafting history of the Convention, the Department of State and a number of federal courts have characterized it as an authoritative text for interpreting the Convention.  See State Department Analysis at 10504; Lozano v. Alvarez, 697 F.3d 41, 52 n.11; Robert v. Tesson, 507 F.3d 981, 988 n.3 (6th Cir. 2007); Koch v. Koch, 450 F.3d 703, 711 n.4 (7th Cir. 2006); Mozes v. Mozes, 239 F.3d 1067, 1069 (9th Cir. 2001).  Recently, the Supreme Court declined to rule on whether the Perez-Vera Report merits any more weight than that given to a scholarly commentary, see Abbott, 130 S.Ct. at 1995, and I do not purport to make such a ruling here.  The Perez-Vera Report is consistent with the official drafting history and provides additional but not dispositive support for denying Petitioner's request that this court toll the one-year time period in Article 12.

of the Convention was thus clarified [by Article 12], since the inherent difficulty in having to prove the existence of those problems which can surround the locating of the child was eliminated."). Accordingly, the fact that the delegates considered the issue of concealment in the course of drafting Article 12, rejected a discovery rule, and never incorporated an equitable tolling provision into Article 12 strongly supports Ms. Yaman's position.

**C.** **Executive Branch Interpretations of Article 12**

Courts generally afford "great weight" to the Executive Branch's interpretation of a treaty. Abbott, 130 S.Ct. at 1993 (citations and quotations omitted). Over the years, the Executive Branch has taken various positions on the equitable tolling issue. Its earliest comment appears to be from 1986, when the Department of State drafted a detailed Legal Analysis of the Convention for the Senate Committee on Foreign Relations (the committee to which the Convention was referred for consideration). State Department Analysis at 10494. In that document, the State Department stated with respect to the one-year period in Article 12 and the well-settled defense:

> If the alleged wrongdoer concealed the child's whereabouts from the custodian necessitating a long search for the

11

> child and thereby delayed the commencement of a return
> proceeding by the applicant, it is highly questionable
> whether the respondent should be permitted to benefit from
> such conduct absent strong countervailing considerations.
> Id. at 10505.

Some courts have relied on this statement as evidence that the Executive Branch supports equitable tolling.  See, e.g., Duarte, 526 F.3d at 570.  Dr. Yaman cites this language in his supplemental brief on the issue.  Doc. No. 143 at 12.

Dr. Yaman also relies on an executive branch statement from 2006 as evidence that the Executive Branch supports equitable tolling.  Doc. No. 58 at 11.  That statement was contained in the response of the United States's Central Authority[3] ("USCA") to question 67 of a questionnaire on the practical operation of the Convention, which the Permanent Bureau of the Hague Conference drafted and distributed to contracting states.[4]  See

---

[3] Central Authorities are designated "to carry out specialized Convention duties," including communicating with other signatory states' Central Authorities and "assist[ing] parents in filing applications for return of or for access to their children under the Convention."  See Possible Solutions – Using the Hague Abduction Convention, http://travel.state.gov/abduction/solutions/hagueconvention/hagueconvention_3854.html ("Possible Solutions"); see also Hague Convention, art. 7.  The United States's Central Authority is the Department of State's Office of Children's Issues.  Possible Solutions.

[4] The contracting states' answers were compiled and submitted to the Special Commission designated to review the operation of the

Doc. No. 57-4, Ex. B. at 32.  Question 67 "invited [States] to comment on any other matters which they may wish to raise concerning the practical operation of the 1980 Convention."  Id. The USCA's response to question 67 was as follows:

> See response to question #13(f), where we discuss equitable tolling of the filing deadline under the Convention.  The USCA supports the concept of equitable tolling of the one-year filing deadline in order to prevent creating an incentive for a taking parent to conceal the whereabouts of a child from the other parent in order to prevent the timely filing of a Hague petition.  Id.

The USCA provided no further analysis or reasoning to support its comments.

To understand the USCA's position in question 67, I examine its response to question 13(f).  Question 13 was a multi-part question which asked each Central Authority to discuss important developments in its country's judicial interpretations of various provisions of the Convention.  Part (f) asked the Central Authorities to comment specifically on developments

_____

Hague Convention during a meeting from October 30 – November 9, 2006.  For a compilation of all countries' responses to the questionnaire, see Hague Convention on Private International Law, "Collated Responses to the Questionnaire Concerning the Practical Operation of the Hague Convention of 25 October 1980 on the Civil Aspects of International Child Abduction," Prel. Doc. No. 2 of October 2006, available at http://www.hcch.net/upload/wop/abd_pd02efs2006.pdf.

related to "The One-Year Period for the Purposes of Article 12 – equitable tolling.  Cite cases."  Id. at 11.  In response to that question, the USCA cited several cases in which courts treated the one-year time period in Article 12 as a statute of limitations and concluded that equitable tolling was required in order to prevent courts from rewarding parents who abduct and conceal their children.[5]  Id. at 11.  The USCA noted, however, that, with respect to all the cases referenced in its responses to each part of question 13, "none . . . can be said to accurately reflect the law of the land" because "the U.S.

---

[5] The USCA also cited one case from the District of Maryland, Belay v. Getachew, 272 F. Supp. 2d 553 (D. Md. 2003), which may or may not have applied equitable tolling.  In that case, more than one year had elapsed between the abduction and the filing of the petition.  The respondent raised the now-settled defense under Article 12.  The petitioner demonstrated that the respondent had concealed the child, causing his filing delay. The court concluded that the child was settled in his new environment, and also that the respondent had concealed the child.  It ultimately ordered the child returned to Sweden.  It is unclear from the opinion, however, whether the court rejected the settledness defense because of equitable tolling, or whether it accepted the defense but exercised equitable discretion to return the child.  Id. at 564 ("[T]he Court feels compelled to conclude that because Respondent took affirmative steps . . . to conceal from Petitioner the location of [the child] . . ., equity must be applied to overcome Respondent's Article 12 argument.").

Supreme Court has so far declined to hear any Convention cases."[6]
Id. at 8.

Recently, the Second Circuit solicited the State
Department's views on equitable tolling in connection with a
Hague Convention case on appeal from the District Court for the
Southern District of New York.  See Doc. No. 57-5, Ex.C, Brief
for United States Department of Justice, Lozano v. Alvarez, 697
F.3d 41 (2d Cir. 2012) (No. 11-2224) ("Lozano brief").  In the
brief it submitted in response, the Department of Justice
analyzed the drafting history of the Convention and the Perez-
Vera Report and took the position that the text, history, and
purpose of the Convention do not permit equitable tolling of the
one-year period in Article 12.[7]  Id.  This brief is the Executive

---

[6] Since 2006, the Supreme Court has sccepted two Convention
cases.  See Abbott, 130 S.Ct. 1983; Chafin v. Chafin, 133 S.Ct.
81 (2012) (granting petition for writ of certiorari to the
Eleventh Circuit).  Neither of these cases involved the
equitable tolling issue at issue here.

[7] In an attempt to reconcile its current position with the State
Department's 2006 response to question 67, the DOJ asserted in
its Lozano brief that "use of the phrase 'equitable tolling'" in
the USCA's response to question 67 "should be understood in the
sense of the availability of the exercise of equitable
discretion."  Lozano brief at 11 n.11.  The DOJ did not provide
any explanation for this assertion, nor is it logical in light
of the USCA's cross-reference in question 67 to its response to
13(f) in which it cited cases, the majority of which treated the

Branch's most recent and most thoroughly reasoned pronouncement on equitable tolling.  It appears, at first, to contradict both the 1986 and 2006 comments by the State Department.

The Lozano brief and the 1986 analysis, however, are not irreconcilable.  See Lozano, 697 F.3d at 54 n.14.  In 1986, the State Department merely indicated that whether the well-settled defense should be available in cases of concealment is "highly questionable"; the Department did not state that the defense is unavailable if concealment resulted in a filing delay beyond one year.  In that sense, the State Department's 1986 statement hardly expressed a definitive view on equitable tolling from which the government could now be viewed as departing, and the relevance of concealment to the well-settled defense remained an open question.

The 2006 questionnaire responses are not similarly reconcilable with the Lozano brief.  Contra Lozano, 697 F.3d at 54 n.14 (asserting that the USCA's 2006 answers are consistent with the Lozano brief given the DOJ's endorsement of a court's equitable discretion to return a settled a child, a question which I do not resolve here).  I conclude, however, that those

one-year period in Article 12 as a statute of limitations subject to equitable tolling.

16

responses merit little, if any, weight for several reasons.
First, unlike the Lozano brief, the 2006 responses do not
analyze the Convention's text, drafting history, or purpose.
Second, the USCA's comments in response to question 67 were
supported only by a cross-reference to its response to question
13(f).  Its response to question 13(f), in turn, merely
summarized cases which, by the USCA's own acknowledgment, do not
reflect settled law.

Third, the Department of Justice is far better equipped
than the USCA to interpret treaty language.  In fact, while
Hague Convention Central Authorities are charged with a number
of tasks related to discharging the State's duties under the
Convention, none of those tasks involves the interpretation of
treaty provisions.  See Hague Convention, art. 7.  Further, the
USCA itself did not purport to provide its own interpretation of
Article 12 in its questionnaire responses.  The USCA's response
to question 67 stated simply that it "supports the concept of
equitable tolling," presumably as a policy matter.  The USCA did
not undertake any legal analysis to demonstrate that the
Convention permits or requires equitable tolling.  Fourth and
finally, the USCA's statement is not the most recent Executive

Branch comment on the issue.  As directed by the Supreme Court,
I give the greatest weight to the most recent Executive Branch
pronouncement on an issue, even though it is "newly
memorialized, and . . . appear[s] contrary to [a view] expressed
by the department at the time of the treaty's signing and
negotiation."  Abbott, 130 S.Ct. at 2007.

D.    **Other Judicial Interpretations**

    1. U.S. Federal Circuit Court Decisions

    Four circuit courts have considered whether Article 12
permits equitable tolling of the one-year time period when a
parent has concealed an abducted child.  Three of those courts
have permitted equitable tolling.  See Dietz v. Dietz, 349 Fed.
App'x. 930 (5th Cir. 2009); Duarte, 526 F.3d 563; Furnes v.
Reeves, 362 F.3d 702 (11th Cir. 2004).  One court has not.  See
Lozano, 697 F.3d 41.  I am unpersuaded by the Fifth, Ninth, and
Eleventh Circuit decisions to apply equitable tolling to the
time period in Article 12 and instead agree with the Second
Circuit decision, which concludes that the one-year period
cannot be equitably tolled based on concealment.

    I reject the majority view for several reasons.  First,
none of the courts that have equitably tolled the one-year

period considered the Convention's drafting history.  Dietz adds
nothing to the debate because it addresses the issue in a
summary fashion.  349 Fed. Appx. at 933.

Second, the courts that applied equitable tolling to the
time period in Article 12 did so because they drew, in error, an
analogy between the time period in Article 12 and state and
federal statutes of limitations.  The equitable power that a
federal court normally has to toll a statute of limitations is
unavailable here because the governing law is an international
treaty.  Although "[i]t is hornbook law that limitations periods
are customarily subject to equitable tolling," and that
"Congress must be presumed to draft limitations periods in light
of this background principle," Young v. United States, 535 U.S.
43, 49-50 (2002) (citations and quotations omitted), the Hague
Convention is not a statute.  It is an international treaty,
which must be interpreted in light of its own drafting history.
Nothing in ICARA suggests that Congress intended for U.S. courts
to imply a tolling provision in Article 12.  In fact, Congress
expressly recognized "the need for uniform international
interpretation of the Convention." 42 U.S.C. § 11601(b)(3)(B).
Thus, it was improper for the Furnes and Duarte courts' to apply

19

equitable tolling to their interpretation of Article 12.  See
Furnes, 362 F.3d at 723 (citing Young, 535 U.S. at 49-50
(2002)); Duarte, 526 F.3d at 570 (citing Young, 535 U.S. at 49-
50).

    2. Foreign Court Decisions

    I also consider "the opinions of our sister signatories."
Abbott, 130 S.Ct. at 1993 (citations and quotations omitted).
Although I am not bound by foreign courts' decisions relating to
treaty interpretation, nor do I defer to their judgment or
analysis, cf. Roper v. Simmons, 543 U.S. 551, 575 (2005), their
interpretations are "entitled to considerable weight." Abbott,
130 S. Ct. at 1993.  This "principle applies with special force
here, for Congress has directed that 'uniform international
interpretation of the Convention' is part of the Convention's
framework." Id. (quoting 42 U.S.C. § 11601(b)(3)(B)).  Foreign
courts have generally rejected proposals to toll the one-year
time period in Article 12.

    In Cannon v. Cannon, the Court of Appeal for England and
Wales rejected the tolling doctrine, stating that it was "too
crude an approach" to determining whether to return a child to
his habitual residence. [2004] EWCA (Civ) 1330, (2005) 1 W.L.R.

32 (Eng.), available at

http://www.hcch.net/incadat/fullcase/0598.htm.  In another U.K.

case, a judge stated:

> Established settlement after more than one year since the wrongful removal or retention is the juncture in a child's life where the Hague judge's legitimate policy objective shifts . . . to a more individualised and emphasised recognition that the length and degree of interaction of the particular child in his or her new situation deserve qualitative evaluation, free of Hague Convention considerations and constraints.  If . . . too high a threshold is set for establishing settlement the consequence is not so much that the Hague aim of speedy return will be frustrated, but rather that a child who has in his or her past already suffered the disadvantages of unilateral removal across a frontier will be exposed to the disruption inherent in what for that child would be a second dys-location, potentially inflicting cumulative trauma.  In re C (Abduction: Settlement) [2004] EWHC (Civ) 1245, [2005] 1 FLR 127 (Eng.), available at http://www.hcch.net/incadat/fullcase/0596.htm.

Courts in Hong Kong and New Zealand have also refused to toll

the one-year period in Article 12.  See A.C. v. P.C., [2004]

HKMP 1238, summary available at

http://www.incadat.com/index.cfm?act=search.detail&cid=825&lng=1

&sl=2; H.J. v. Secretary for Justice [2006] NZFLR 1005, summary

available at

http://www.incadat.com/index.cfm?act=search.detail&cid=882&lng=1

&sl=2.[8]

**E.   Policy Considerations**

Courts that apply equitable tolling to Article 12 generally
emphasize the presumed deterrent effect of the doctrine and its
accord with the Convention's overarching goal of "deterring
child abduction."  Duarte, 526 F.3d at 570.  I share the Ninth
and Eleventh Circuits' concern that "awarding an abducting
parent an affirmative defense if that parent hides the child
from the parent seeking return would not only encourage child
abductions, but also encourage hiding the child from the parent
seeking return."  Id.  That concern, however, was carefully
considered by the drafters of the Convention, and the solution

---

[8] I acknowledge the arguable limitations of the INCADAT database
summaries.  See, e.g., Carol S. Bruch and Margaret M. Durkin,
The Hague's Online Child Abduction Materials: A Trap for the
Unwary, 44 Fam. L.Q. 65, 74-81 (2010) ("The cases it includes
are selected by the Correspondents, who are instructed to choose
significant cases from their jurisdictions.  Despite the
importance of their task, their authorship is not identified in
the summaries they prepare, and their names are not listed on
the Hague's website.  These practices prevent users from
evaluating their training, linguistic skills, education in
comparative law, and legal experience - all relevant
information."); Linda Silberman, Interpreting the Hague
Abduction Convention: In Search of A Global Jurisprudence, 38
U.C. Davis L. Rev. 1049, 1084 (2005) ("The INCADAT database is a
wonderful resource in providing information about Convention
cases worldwide, but it does so usually without much critical
analysis.").  These limitations are irrelevant here, however,
because these two cases are not necessary to my decision.

they adopted does not permit a court to disregard the possibility that a child may be well-settled in his new environment in cases of concealment.  Even if I would have balanced the competing interests differently and incorporated a tolling provision into Article 12, it is not for me to do so when the drafters of the Convention elected to follow a different path.  See Sosa v. Alvarez-Machain, 542 U.S. 692, 727 (2004).


## III. CONCLUSIONS

I deny Petitioner's motion to preclude the Respondent from presenting the affirmative defense of settledness. (Doc. No. 57.)  Nonetheless, evidence of the children's concealment since their abduction from Turkey will be relevant to a determination of whether the children are, in fact, settled.

SO ORDERED.


Paul Barbadoro
United States District Judge


January 28, 2013

cc:  Counsel of Record

23